MARK MORGAN,

                        Plaintiff,        **1:15-cv-00449 (MAT)**

                                                    **DECISION AND ORDER**

         -vs-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

                        Defendant.

## I. Introduction

Plaintiff Mark Morgan ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("defendant" or "the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. Procedural History

Plaintiff protectively filed applications for DIB and SSI on August 11, 2011 and August 18, 2011, respectively, alleging disability due to spinal injuries, broken screws from a faulty neck operation, herniated and bulging discs, and lower back problems. Administrative Transcript ("T.") 175-76, 213. Plaintiff's applications were initially denied, and he timely requested a hearing before an administrative law judge ("ALJ"), which occurred on February 19, 2013, before ALJ Nancy Pasiecznik. T. 29-52. ALJ Pasiecznik retired prior to issuing a decision in plaintiff's case, and plaintiff's case was transferred to ALJ Donald T. McDougall, who held a supplemental hearing on September 19, 2014. T. 10, 53-77. On December 30, 2014, ALJ McDougall issued a decision in which he found plaintiff not disabled as defined in the Act. T. 7-22. The Appeals Council denied plaintiff's request for review on April 1, 2015, rendering the ALJ's determination the Commissioner's final decision. T. 1-4. Plaintiff subsequently commenced the instant action.

## III. The ALJ's Decision

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2015. T. 12. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that plaintiff had not engaged

in substantial gainful activity since April 30, 2011, the alleged onset date. *Id*. At step two, the ALJ found that plaintiff had the severe impairment of vertebrogenic disorder, status post cervical fusion with hardware, and the non-severe impairment of depressive disorder. T. 12-13. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T. 14. Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: requires the ability to change positions for one to two minutes at least every half-hour and should not perform jobs that require rotation of the head or neck more than 45 degrees in either direction (90 degrees total). *Id.* At step four, the ALJ found that plaintiff able to perform his past relevant work as a debt collector. T. 21. Accordingly, the ALJ found that plaintiff was not disabled. *Id.*

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted).

Here, plaintiff makes the following arguments in favor of his motion for judgment on the pleadings: 1) the ALJ violated the treating physician rule by giving little weight to the opinions of his treating physicians, Drs. Eric P. Roger, Franklyn Campagna, and John Pollina, and 2) the ALJ failed to properly evaluate plaintiff's credibility. For the reasons discussed below, the Court finds these arguments without merit.

### A. The ALJ did not Violate the Treating Physician Rule

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's

4

opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 1. The ALJ Properly Assessed Dr. Roger's Opinion

Plaintiff first argues that the ALJ erred in affording only limited weight to Dr. Roger's opinion dated October 20, 2011, and failed to "even mention the further reports of Dr. Roger after his initial consultation." Docket No. 7-1 at 11. Plaintiff's argument lacks merit.

#### a. Dr. Roger's Treatment of Plaintiff

Plaintiff first treated with Dr. Roger, a neurosurgeon, in October 2011. Dr. Roger examined plaintiff on October 12, 2011, and found that plaintiff had 5/5 strength in all muscle groups of the right and left arms with normal sensation, and that plaintiff had a full range of motion in his shoulders. T. 510. Dr. Roger reviewed plaintiff's imaging results and determined that prior fusion surgery had resulted in a complete C5-C6 fuse, but that the

5

fusion at C6-C7 appeared incomplete, with bilateral screw fractures at C7. *Id*. Dr. Roger also noted some mild foraminal stenosis, but no spinal cord compression. *Id*. He offered plaintiff either the continuation of conservative management or surgical intervention, and plaintiff chose surgical intervention. T. 511.

On October 20, 2011, Dr. Roger completed a disability screening assessment for plaintiff, in which he noted that plaintiff had cervical disc displacement and was scheduled for surgical intervention on November 22, 2011. T. 402-403. Dr. Roger checked boxes indicating that plaintiff was very limited in his abilities to walk, stand, sit, lift, carry, push, pull, bend, use his hands, and climb. T. 403.

On November 22, 2011, plaintiff underwent a post anterior cervical disectomy and fusion C5-C6 and pseudarthrosis. T. 447. The procedure was completed without complication. T. 476.

Plaintiff followed up with Dr. Roger on January 30, 2012. T. 509. Dr. Roger observed that plaintiff was doing "quite well" and that his neck pain has "significantly improved." T. 509. Dr. Roger recommended physical therapy. *Id*. He refilled plaintiff's prescriptions for Valium and Oxycodone, but indicated that he did "not feel comfortable refilling his OxyContin." *Id*.

Plaintiff followed up with Dr. Roger again on March 26, 2012. T. 508. Dr. Roger stated that plaintiff's most recent CT scan "look[ed] absolutely wonderful." T. 508. He noted that plaintiff

6

was in danger of becoming dependent on his cervical collar, and informed plaintiff that he "really need[ed] to take off his collar and work towards aggressive rehabilitation." *Id*. Dr. Roger referred plaintiff to Buffalo Sport and Spine for rehabilitation. *Id*.

### b. The ALJ's Assessment of Dr. Roger's Opinion

In his decision, the ALJ gave limited weight to Dr. Roger's October 2011 disability screening assessment. T. 20. The ALJ noted that the assessment had been completed the same month that plaintiff began treating with Dr. Roger, that Dr. Roger failed to quantify plaintiff's limitations, and that the assessment predated plaintiff's section cervical spine surgery. *Id*. The Court finds that these constituted good reasons for granting Dr. Roger's opinion less than controlling weight.

First, with respect to the timing of the opinion, the relevant regulations expressly instruct the ALJ to consider the length of the treatment relationship in determining how much weight to afford a medical source opinion. *See* 20 C.F.R. § 404.1527(c). Courts have not hesitated to find that opinions rendered after only one or two visits are not entitled to controlling weight. *See, e.g., Cramer v. Berryhill*, 2017 WL 4784318, at *3 (W.D.N.Y. Oct. 24, 2017). Here, the ALJ correctly noted that Dr. Roger's October 2011 opinion was issued almost immediately after he started treating plaintiff, and was thus properly afforded less than controlling weight.

Second, the ALJ was also correct to discount the weight given to Dr. Roger's assessment based on the failure to quantify plaintiff's limitations. Courts in this Circuit have consistently held that "lack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less weight." *Wright v. Colvin*, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens-Feliciano v. Astrue*, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). In this case, the form completed by Dr. Roger required him only to check off boxes and fill in blanks. Dr. Roger provided no additional supporting evidence, such as identifying the clinical or laboratory findings to support his assessment, nor did he provide any additional explanation of the basis for his conclusion. The ALJ properly considered this factor in determining what weight to afford Dr. Roger's opinion.

Finally, the ALJ properly afforded Dr. Roger's opinion less than controlling weight because it was rendered before plaintiff's November 2011 surgery, which significantly improved his condition. It is well-established that "medical source opinions that are ... stale[] and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (quotation marks and citation omitted); *see also Jones v. Comm'r of Soc. Sec.*, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical opinion in part because it was 1.5 years stale as of the plaintiff's hearing date and did not account for her deteriorating condition); *Girolamo v. Colvin*, 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery). In this case, Dr. Roger's October 2011 assessment was indisputably rendered stale by the successful surgery that occurred in November 2011. Indeed, Dr. Roger's own treatment records state that the surgery went well, that plaintiff's condition had significantly improved, and that his post-surgery CT scan looked "absolutely wonderful." Under these circumstances, Dr. Roger's October 2011 assessment, which was outdated and based on an incomplete medical record, clearly was not entitled to controlling weight.

### 2. The ALJ Properly Considered Dr. Campagna's Opinion

Plaintiff next argues that the ALJ erred in not affording controlling weight to the opinion of his primary care physician, Dr. Campagna. This argument is also without merit.

The opinion of Dr. Campagna's to which plaintiff refers appears to be nothing more than a single line in a progress note referring to plaintiff as "disabled" from his past work. *See* T. 526. The ALJ noted in his decision that this opinion by Dr. Campagna was not supported by any objective evidence and appeared to be based solely on plaintiff's subjective statements. T. 20. Accordingly, the ALJ afforded this opinion minimal weight. *Id*.

As a threshold matter, an ALJ is not required to defer to statements by a treating physician that a claimant is disabled. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the "ultimate finding of whether a claimant is disabled and cannot work" is reserved to the Commissioner). As such, the ALJ plainly did not err in declining to afford controlling weight to Dr. Campagna's opinion with respect to this ultimate issue.

Moreover, it was proper for the ALJ to discount Dr. Campagna's opinion where it was based solely on plaintiff's subjective complaints. As discussed further below, the ALJ in this case appropriately determined that plaintiff was not credible. An ALJ is not required to give controlling weight to a treating physician's opinion if it is "based largely upon [the claimant's]

10

subjective responses, which were not themselves entirely credible." *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012). In short, plaintiff has failed to demonstrate that the ALJ's treatment of Dr. Campagna's opinion was error or that remand is warranted.

### 3. Dr. Pollina Did Not Issue Any Opinions

In his moving papers, plaintiff contends that the ALJ should have afforded controlling weight to two "opinions" rendered by Dr. Pollina on April 25, 2014 and June 6, 2014. Docket No. 7-1 at 11. However, a review of the record shows that Dr. Pollina did not issue any opinion regarding plaintiff's physical limitations on either of those dates. Instead, on each of those dates, Dr. Pollina examined plaintiff and completed office notes reflecting the results of his examination. *See* T. 498-501. Dr. Pollina's office notes say nothing about plaintiff's RFC and do not contain any information regarding any limitations in functioning. As such, it is not clear to the Court, nor has plaintiff explained, what exactly in Dr. Pollina's notes plaintiff contends the ALJ should have afforded controlling weight to.

In any event, Dr. Pollina's notes are in no way inconsistent with the ALJ's RFC determination. Dr. Pollina noted that plaintiff had a normal gait and station, 5/5 strength bilaterally in his upper extremities, no tenderness on palpation of his cervical spine or paraspinal muscles, and negative Hoffman's sign bilaterally. T. 499. He also recommended that plaintiff wean himself off his surgical collar, noting that doing so would significantly help his

cervicalgia. *Id*. Plaintiff has proffered no explanation, nor can the Court discern one, for how these notes would support a more restrictive RFC finding.

For the foregoing reasons, the Court rejects plaintiff's argument that the ALJ violated the treating physician rule in considering the opinions of Drs. Roger, Campagna, and Pollina. As such, plaintiff has failed to demonstrate that remand is warranted on this basis.

**B.    The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff's second and final argument is that the ALJ failed to properly assess his credibility. In particular, plaintiff contends that it was improper for the ALJ to: 1) use boilerplate in describing his assessment of plaintiff's credibility; 2) find plaintiff less than credible because he failed to follow a prescribed treatment; and 3) find plaintiff less than credible because he exhibited drug-seeking behaviors. Again, plaintiff's argument lacks merit.

"Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). In this case, the ALJ found plaintiff not credible, noting that: 1) his allegations were not supported by the medical

12

evidence of record; 2) he had been inconsistent in reporting his medical history; 3) he had been dishonest with his physician by seeking an oxycodone prescription despite having already obtained that medication from another source; and 4) he had failed to follow through with treatment recommendations - namely, the recommendation from multiple physicians that he wean himself off the cervical collar.  T. 20.

As a threshold matter, the ALJ's use of some boilerplate in discussing plaintiff's credibility, standing alone, does not render his determination improper. *See Abdulsalam v. Comm'r of Soc. Sec.*, 2014 WL 420465, at *7 (N.D.N.Y. Feb. 4, 2014) (the use of boilerplate language when discussing credibility "does not merit remand if the ALJ offers specific reasons to disbelieve the claimant's testimony") (quotation omitted).  Here, in addition to the boilerplate statement with which plaintiff takes issue, the ALJ offered specific, concrete reasons for finding plaintiff not credible.  As such, "the Court finds that the ALJ's use of the contested boilerplate does not warrant remand here.  Th[e] Court agrees that the use of such boilerplate is conclusory and unhelpful.  On the other hand, reviewing courts do not demand perfect decisions, and while this sort of boilerplate is inadequate, by itself, to support a credibility finding, its use, does not make a credibility determination invalid."  *Id*. at *8 (quotation omitted).

The ALJ also did not err in taking into account plaintiff's drug-seeking behavior and his failure to abide by his physicians' recommendations in assessing his credibility. "[A] claimant's misuse of medications is a valid factor in an ALJ's credibility determinations." *Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 250 (N.D.N.Y. 2013) (finding that ALJ properly discounted plaintiff's testimony based on drug-seeking behavior). The record in this case supports the ALJ's conclusion that plaintiff had engaged in drug-seeking behavior. As the ALJ explained, Dr. Pratibha Bansal of Pain Rehab of WNY noted that plaintiff had been dishonest with him in seeking a prescription for oxycodone, telling him that he was out of the medication when another physician had given him a prescription that same day. T. 436. Similarly, Dr. Roger noted that he was not "comfortable" refilling plaintiff's prescription for OxyContin. T. 509. Plaintiff also cancelled a follow-up appointment with Dr. Hans Kortiz of the Kortiz Medical Pain Management Office after Dr. Kortiz told him he could not prescribe him pain medication. T. 466. Under these circumstances, the Court cannot find that it was error for the ALJ to conclude that plaintiff's drug-seeking behavior reflected poorly on his credibility.

Similarly, it was proper for the ALJ to consider plaintiff's failure to follow his physician's treatment recommendations in assessing his credibility. *See, e.g, Nicholson v. Colvin*, 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015) ("The ALJ properly considered Plaintiff's failure to comply with medication treatment

14

as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen."). The record in this case is replete with recommendations by multiple physicians that plaintiff wean himself of his cervical collar, yet he failed to do so. The ALJ did not err in taking this fact into account when he found plaintiff not credible.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Andrisani v. Colvin*, 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017) (internal quotation omitted). In this case, the ALJ adequately explained the rationale for his credibility determination, and that rationale was reasonable in light of the record. Accordingly, remand is not warranted on this basis.

## V. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 0) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      **s/Michael A. Telesca**
                                      _____

                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:     December 5, 2017
            Rochester, New York